UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-CV-09691-RGK-PJW | Date | February 27, 2020 |
|---|---|---|---|
| Title | ***Leonard Williams v. Warner Music Group Corp.*** | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:**       **(IN CHAMBERS) Order Re: Plaintiffs' Motion to Certify Class [DE 53]**

## I.    INTRODUCTION

This action arises out of a dispute between a musician and his record label. On October 4, 2018, Plaintiff Leonard Williams ("Williams") filed a class action complaint against Warner Music Group Corp. ("WMG") in state court. On November 16, 2018, WMG removed the action to this Court, invoking the Court's jurisdiction under the Class Action Fairness Act ("CAFA").

On December 21, 2018, Plaintiffs Williams and The Lenny Williams Production Company ("LWPC") (collectively, "Plaintiffs"), on behalf of a putative class, filed a First Amended Complaint ("FAC") against Defendants WMG, Warner Bros. Records, Inc. ("WBR"), and Does 2-10 (collectively, "Defendants"). Plaintiffs' FAC alleges ten causes of action: (1) breach of contract; (2) open book account; (3) fraud; (4) violations of California Business and Professions Code § 17200; (5) conversion; (6) unjust enrichment; (7) accounting; (8) breach of the covenant of good faith and fair dealing; (9) declaratory judgment; and (10) recession.

On January 25, 2019, Defendants filed a motion to dismiss and strike several of Plaintiffs' claims. On March 13, 2019, the Court granted the motion in part, dismissing claims two, five, six, ten, and all claims against WMG. Thus, the operative claims asserted by Plaintiffs against WBR are (1) breach of contract; (2) fraud; (3) violations of California Business and Professions Code § 17200; (4) accounting; (5) breach of the covenant of good faith and fair dealing; and (6) declaratory judgment.

On April 11, 2019, the Court issued an order finding that WBR failed to satisfy its burden of establishing subject matter jurisdiction and remanding the action to state court. WBR appealed the order to the Ninth Circuit. On October 30, 2019, the Ninth Circuit concluded that the notice of removal plausibly alleged a basis for federal jurisdiction and vacated and remanded the Court's remand order.

On December 4, 2019, the Court issued a post-remand order to show cause ("OSC"). Upon review of WBR's responses, the Court discharged the OSC and reopened the case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-CV-09691-RGK-PJW | Date | February 27, 2020 |
|---|---|---|---|
| Title | *Leonard Williams v. Warner Music Group Corp.* | | |

Presently before the Court is Plaintiffs' Motion for Class Certification ("Motion") under Federal Rule of Civil Procedure ("Rule") 23. For the following reasons, the Court **DENIES** Plaintiffs' Motion.

**II.     FACTUAL BACKGROUND**

Plaintiffs allege the following:

Williams is a musician with numerous chart hits, and LWPC is the corporate entity that Williams used to enter contracts on his behalf. WBR is a record label which obtained the rights to exploit the artistic work of Plaintiffs and the proposed class members in exchange for the payment of money to these individuals and entities, as required by standard contracts. WMG, WBR's parent corporation, administers artist royalty payments according to artists' compensation agreements. WMG, WBR, and their foreign subsidiaries are each other's alter egos.

Plaintiffs' FAC alleges that WBR and its subsidiaries have not paid the full amount of royalties due to artists in connection with the digital streaming of sound recordings in foreign countries. According to Plaintiffs, when music is digitally streamed abroad, WMG receives the associated revenue. WMG then transfers a portion of that revenue to WBR, who calculates the royalty rate owed to artists based on that diluted percentage of the total "source" revenue. Plaintiffs allege that by assessing the royalty rate based on this diluted amount rather than the "source" revenue, WBR is effectively assessing an intercompany charge for international sales. Plaintiffs aver that assessing such a charge constitutes a breach of the compensation agreements.

Broadly speaking, the compensation agreements at issue can be grouped into three categories: (1) contracts that provide for royalties for digital streaming; (2) contracts that do not expressly provide for royalties for digital streaming but contain a general licensing provision; and (3) contracts that are silent on royalties for digital streaming and general licensing. LWPC's contract with WBR (the "LWPC Contract"), entered into in January 1974, falls under this third category of contracts. Under the terms of the LWPC Contract, WBR agreed to pay LWPC "[a] royalty with respect to *phonograph records* manufactured and sold by [WBR] embodying the master recordings." (FAC, Ex. 1 at 10, ECF No. 14-1 (emphasis added).) "Phonograph record" is defined as "all conventional types of phonograph records now in use, as well as tape recordings of all types, and any other products and devices now known or unknown by which sound may be recorded for later transmission to listeners. . ." (*Id.* at 1.)

As for a royalty rate, the LWPC Contract provides that royalties will be computed based on "100% of [WBR's] net sales of all phonograph records embodying [LWPC's] performances" minus taxes. (*Id.* at 1A.) Net sales are determined "cumulatively on the basis of the number of copies of such record sold by [WBR] or one of its affiliates to an independent third party," minus "all returns, rebated credits, cancellations, exchanges, etc." (*Id.*) Finally, royalties for records not sold through WBR's customary distribution channels "shall be computed on the basis of the net amount per record . . . actually received or accounted for by [WBR] or its subsidiaries." (*Id.* at 3A.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-CV-09691-RGK-PJW | Date | February 27, 2020 |
|---|---|---|---|
| Title | *Leonard Williams v. Warner Music Group Corp.* | | |

## III.   JUDICIAL STANDARD

As a threshold to class certification, the proposed class must satisfy four prerequisites under Rule 23(a). First, the class must be so numerous that joinder of all members individually is impracticable. Fed. R. Civ. P. 23(a)(1). Second, there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Third, the claims or defenses of the class representative must be typical of the claims or defenses of the class as a whole. Fed. R. Civ. P. 23(a)(3). Finally, the proposed class representatives and proposed class counsel must be able to fairly and adequately protect the interests of all members of the class. Fed. R. Civ. P. 23(a)(4).

If all four prerequisites of Rule 23(a) are satisfied, a court must then determine whether to certify the class under one of the three subsections of Rule 23(b). Under Rule 23(b), the proposed class must establish that: (1) there is a risk of substantial prejudice from separate actions; (2) declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) common questions of law or fact predominate such that a class action is superior to other methods available for adjudicating the controversy at issue. Fed. R. Civ. P. 23(b).

In analyzing whether the proposed class meets the requirements for certification, a court must take the substantive allegations of the complaint as true and may consider extrinsic evidence submitted by the parties. *See Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

## IV.   DISCUSSION

### A.   The Proposed Class Definition

Plaintiffs seek to certify a class of individuals who entered into three types of contracts with WBR: (1) contracts that provide for royalties for digital streaming; (2) contracts that do not expressly provide for royalties for digital streaming but contain a general licensing provision; and (3) contracts that are silent on royalties for digital streaming and general licensing. Specifically, Plaintiffs define the proposed class as follows:

All persons and entities in the United States, their agents, successors in interest, assigns, heirs, executors, trustees, and administrators who are or were parties to agreements with Warner Bros. Records, Inc. or its subsidiaries and affiliates whose contract has a California choice of law provision and either:

1. Expressly provides for royalties for digital streaming and an applicable royalty rate of 50% or more of Warner Records' net receipts;

2. Does not expressly provide for royalties for digital streaming and contains a general licensing provision at a royalty rate of 50% or more of Warner Records' net receipts; or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-CV-09691-RGK-PJW | Date | February 27, 2020 |
|---|---|---|---|
| Title | *Leonard Williams v. Warner Music Group Corp.* | | |

3. Does not expressly provide for royalties for digital streaming or a general licensing provision.

(Proposed Order at 2, ECF No. 53-14.)

  In their Proposed Order, Plaintiffs define only one class. However, in their Motion for Class Certification, Plaintiffs appear to seek certification of two distinct classes: a Rule 23(b)(2) class and a Rule 23(b)(3) class. (*See generally* Mot. at 13–18, ECF No. 53.) Because Plaintiffs have not separately defined these classes, the Court assumes that Plaintiffs' proposed class definition applies to both.

  **B.**  **Typicality is Not Satisfied**

  The Court begins by considering the typicality requirement of Rule 23(a)(3), which requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class they seek to represent. *See* Fed. R. Civ. P. 23(a)(3). This does not require that the claims of the representative parties be *identical* to the claims of the proposed class members. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1011, 1020 (9th Cir. 1998). Rather, typicality focuses on whether the unnamed class members have injuries similar to those of the named plaintiffs, and whether those injuries result from the same injurious course of conduct. *Armstrong v. Davis*, 275 F.3d 849, 869 (2001). The Ninth Circuit has instructed that "a named plaintiff's motion for class certification should not be granted 'if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

  Here, WBR raises two primary arguments as to why Plaintiffs are vulnerable to unique defenses that are atypical and threaten to become the focus of this lawsuit. The Court addresses each in turn.

    *i.*  *Vulnerabilities Stemming from the Nature of the LWPC Contract*

  First, WBR points out that the LWPC Contract falls under the third category of contracts set forth above, meaning that it is silent on royalty rates for both digital streaming and general licensing. WBR argues that this a problem because individuals who entered into this category of contracts face a significant hurdle uncommon to the rest of the proposed class—namely, they must establish not only that there was an implied contract to apply the applicable royalty rate to 100% of foreign revenues for digital streaming, but also that there was an implied contract to pay or credit for foreign digital streaming in the first place. Stated differently, individuals like Plaintiffs who entered into the third category of contracts must prove that there was an implied contract (1) to pay or credit for digital streaming, (2) at a 50% royalty rate, and (3) apply that royalty rate to 100% of revenues received by foreign affiliates. In contrast, individuals who entered into the first and second categories of contracts need only establish that there was an implied contract to apply the applicable royalty rate for digital streaming to 100% of revenues received by foreign affiliates.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-CV-09691-RGK-PJW | Date | February 27, 2020 |
|---|---|---|---|
| Title | ***Leonard Williams v. Warner Music Group Corp.*** | | |

The Court shares WBR's concern that Plaintiffs will have to spend considerable time litigating an issue not shared by the proposed class as a whole—whether contracts falling within this third category even require WBR to pay royalties for digital streaming. Although Plaintiffs may not be the only class members to grapple with this defense,[1] there is a danger that the majority of the proposed class members will suffer because Plaintiffs will be engrossed with disputing WBR's arguments regarding Plaintiffs' individual case. This concern might not be sufficient to defeat typicality in isolation, but this is not the only atypical defense which Plaintiffs may have to grapple with. As set forth below, Plaintiffs must grapple with another defense which relates to Plaintiffs' purported damages.

       *ii.*      <u>*Vulnerabilities Regarding Plaintiffs' Damages*</u>

WBR identifies another issue which threatens to preoccupy Plaintiffs in this litigation. In the FAC, Plaintiffs allege that WBR "materially breached" the LWPC Contract "by failing to disburse streaming revenue derived from international sales[.]" (FAC ¶ 42, ECF No. 14.) This claim is subject to a defense unique to Plaintiffs—that WBR did not fail to disburse streaming revenue because the account was unrecouped. At present, the account associated with the LWPC Contract is unrecouped due to past advances and recoverable expenses by WBR. (Goldberg Decl. ¶ 15, ECF No. 58-1.) Under the terms of the LWPC Contract, "LWPC will not receive any royalty payments from WBR under the LWPC Contract until its account is fully 'recouped,' meaning that the recordings at issue have generated royalties that exceed the amounts WBR previously advanced to LWPC or paid for recoverable expenses under the LWPC Contract." (*Id.*) "At the rate the account was credited in the most recent royalty period (even if adjusted for Plaintiffs' claim of underpayment), it would take more than [redacted] before WBR would owe royalty payments[,]" by which time any copyright will have expired. (Opp. at 18–19, ECF No 58.)

Plaintiffs' apparent lack of actual damages raises issues as to typicality. To prevail on a breach-of-contract claim under California law, the plaintiff must establish damages. But there is a split of authority as to whether nominal damages are sufficient. *See In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053, 1061 (N.D. Cal. 2016) (noting that "California case law reveals some uncertainty about whether actual damages are a necessary element for a breach of contract claim.") (collecting cases); *Unidisc Music, Inc. v. Shelby*, No. 2:17-CV-04287-SJO (JEM), 2019 WL 4640394, at *6 (C.D. Cal. Aug. 8, 2019) (granting summary judgment based on plaintiff's failure to show "appreciable and actual damage resulting from a failure to properly issue royalty statements"). There is a danger that, as this case progresses, Plaintiffs will have to spend considerable time and effort litigating (1) whether they have suffered actual damages in light of the unrecouped nature of the account, and, if not, (2) whether a breach-of-contract claim requires proof of actual damages. Unlike Plaintiffs, other proposed class

---

[1] The Court acknowledges that this defense may not be "unique" to Plaintiffs. *See Hanon*, 976 F.2d at 508. But it is unclear how many proposed class members entered into the third category of contracts with WBR. *Cf. Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 534 (N.D. Cal. 2012) (finding typicality satisfied on remand where the defense at issue was "far from unique among class members[.]")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-CV-09691-RGK-PJW | Date | February 27, 2020 |
|----------|------------------------|------|-------------------|
| Title | ***Leonard Williams v. Warner Music Group Corp.*** | | |

members "have generated sufficient royalties to become fully recouped or to reasonably expect that they will become fully recouped." (Goldberg Decl. ¶ 16.) Thus, they do not face this same challenge.

Accordingly, because Plaintiffs face at least two unique defenses which threaten to become the focus of this litigation, the Court concludes that the typicality requirement is not satisfied. Plaintiffs are "susceptible to individual defenses that threaten to detract seriously from the presentation of the class's case and become a central focus of the litigation." *Kandel v. Brother Int'l Corp.*, 264 F.R.D. 630, 632 (C.D. Cal. 2010).[2] Because typicality is not satisfied, the Court need not consider the remaining requirements of Rule 23(a) or Rule 23(b).

**C.      Request for Additional Discovery**

The Court declines Plaintiffs' request to defer ruling on the present Motion until after additional discovery has been completed.

**V.      CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Class Certification.

**IT IS SO ORDERED.**

_____   :   _____

Initials of Preparer      _____

---

[2] The Court notes that the issues discussed herein also bear to some extent on the adequacy of Plaintiffs as class representatives. *See Petersen v. Costco Wholesale Co., Inc.*, 312 F.R.D. 565, 577 (C.D. Cal. Jan. 25, 2016) (noting that "[u]nique defenses can go to either the typicality or adequacy of class representatives."); *Graham v. Overland Sols., Inc.*, No. 10-CV-672 BEN BLM, 2011 WL 1769610, at *2 (S.D. Cal. May 9, 2011) ("The same concerns that bar a finding of typicality weigh on the Court's adequacy analysis, including the existence of unique defenses.")